UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PAMELA BENTLEY MILLER,
DANIEL MILLER,

    Plaintiffs,

    v.

ANGELA NEWPORT, SAM CAIN,
KATHY BALAM, WENDY
PRATT, JERRY PROLO, BILL
WILLSON,

    and

DEBORAH HARPER, KENNETH
FELDMAN, JOHN AND JANE
DOE 1-10,

    Defendants.

No. CV-12-0540-RHW

**ORDER GRANTING DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT AND TO DISMISS**

     Before the Court are Defendant Feldman's Partial Motion to Dismiss and Motion for Summary Judgment, ECF Nos. 38, 39; and Washington Department of Health and Social Services Defendants Newport, Cain, Balam, Pratt, Prolo, and Wilson's (hereafter "State Defendants") Motion for Summary Judgment. ECF No. 44. Plaintiffs have submitted a response, ECF No. 57, to which Defendants have replied, ECF Nos. 57, 60. Although a telephonic hearing was held in the above-captioned matter on December 2, 2013, Plaintiffs failed to appear. Plaintiffs are proceeding *pro se* in this action, while Amy C. Clemmons appeared on behalf of the State Defendants and Kimberly E. Baker represented Defendant Feldman. The Court has considered the pleadings filed in support of, and in opposition to, the

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND TO DISMISS * 1**

Motions and the remainder of the file, and grants the Motions for the reasons stated herein.

## BACKGROUND [1]

This case involves a § 1983 action brought by Plaintiffs Pamela Bentley Miller, Daniel Miller, and Ms. Bentley Miller's minor children J.G., R.B., and A.M. [2] Plaintiffs bring the instant suit against a number of Washington Department of Health and Social Services ("DSHS") employees and physicians Deborah Harper and Kenneth Feldman. Plaintiffs allege that Defendants illegally and unconstitutionally removed Plaintiffs' children from their custody, as a result of dependency proceedings initiated by State Defendants, who suspected Ms. Bentley Miller and Mr. Miller of child abuse and neglect. Plaintiffs allege the removal of their children violated their constitutional rights and caused intentional and negligent infliction of emotional distress. Finally, they seek declaratory and injunctive relief. Plaintiffs are former residents of Omak and Colville, Washington, but now reside in Indiana.

Defendants Newport, Cain, Balam, Pratt, Prolo and Wilson are DSHS employees, within the Department of Children and Family Services ("DCFS") and

---

[1] The following facts are taken from State Defendants' and Defendant Feldman's Statement of Material Facts. *See* ECF Nos. 40 and 45. As Defendants point out, Plaintiffs have failed to submit a statement of material facts. Instead, they rely solely upon the allegations contained in the Complaint, and the one-page Declaration of Ms. Bentley Miller, in opposing summary judgment. *See* ECF Nos. 1, 57-2.  Consequently, pursuant to Local Rule 56.1(d), facts not responded to or disputed are considered admitted by the non-movant. *See* LR 56.1(d); *see also* Fed. R. Civ. P. 56(e) 2)-(3).

[2] On August 22, 2013, the Court entered an Order Denying Plaintiffs' Designation of Guardian Ad Litem and dismissed the claims of minor Plaintiffs J.G., R.B., and A.M., for failure to comply with Local Rule 17.1(a) and Fed. R. Civ. P. 17(c)(2) and 41(b). *See* ECF No. 35.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 2

Child Protective Services ("CPS") located in Omak and Colville, [3] Washington. Specifically, Defendant Sam Cain was the social worker employed by DSHS/DCFS, and assigned to the November 2005 referral of abuse received from Sacred Heart Hospital. Defendant Cain then initiated temporary removal of Ms. Bentley Miller's daughters J.G. and R.B, based on the complaints of R.B.'s physician team.

Defendant Kathy Balam was a social worker employed by DSHS/DCFS in their Omak office, who supervised the dependency of J.G. and R.B. from December 2005 through July 2007, after the case was transferred from Defendant Cain. Defendant Angela Newport was a Colville social worker, also employed by DSHS/DCFS, involved in the Dependency proceedings and removal of Plaintiffs' infant daughter A.M. in 2007. Defendant Wendy Pratt was a supervisor employed by CPS and Child Family Welfare Services ("CFWS"), who supervised social worker Monica Accord, the case worker assigned to J.G., R.B., and A.M.'s cases from June of 2008 to October of 2009. Defendant Pratt was not involved with the removal and dependency proceedings of Ms. Bentley Miller's children. Defendant Jerry Prolo was a temporary supervisor employed by the Colville DSHS/DCFS office from November of 2006 until January of 2008. Defendant Prolo supervised social worker Defendants Bill Wilson and Angela Newport. Defendant Bill Wilson was a courtesy supervisor assigned to J.G. and R.B.'s case.

---

[3] The facts giving rise to this case involved DSHS's office in Omak, WA, and the dependency proceedings were initially filed in Grant County. However, in March of 2006, J.G. and R.B. moved to Colville to reside with their biological father Anthony Bentley (not a party to this action). Thus, the case was transferred to State Defendants' Colville office, although the Omak office was allowed courtesy supervision.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 3**

Defendant Deborah Harper [4] is a physician employed by Sacred Heart Medical Center who, along with a team of doctors, first reported the suspected abuse to CPS after consulting with R.B.'s treating physicians. On November 7, 2007, Ms. Bentley Miller brought R.B. to the hospital for a neurological evaluation and seizure complaints. However, Defendant Harper and the doctor team suspected that Ms. Bentley Miller suffered from Factitious Disorder/Munchausen's Syndrome by Proxy [5] and placed R.B. on administrative hold, after referring the matter to CPS. The physicians' collectively opined that Ms. Bentley Miller presented false and unsubstantiated medical symptoms regarding her daughter R.B. and reported that both R.B. and J.G. were in "imminent risk of harm" if left in the care of Ms. Bentley Miller.

---

[4] On May 2, 2013, the Court noted during a telephonic hearing that Plaintiffs had yet to serve Defendant Harper within Rule 4(m)'s 120-day time period. *See* ECF No. 22; *see also* Fed. R. Civ. P. 4(m). The Court then granted Plaintiffs an additional 30 days to effectuate service on Dr. Harper. *Id.* However, the docket reflects that Plaintiffs have failed to serve Dr. Harper. Thus, the Courts finds, absent good cause existing, that all claims against Defendant Harper are dismissed with prejudice. *Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007). Likewise, this same analysis applies to John and Jane Doe 1-10, who were also not served by Plaintiffs. Moreover, as detailed *infra*, all claims against Dr. Harper would also be barred, either by the applicable statute of limitations, or Plaintiffs' failure to meet the required state tort claim notice requirements of RCW 4.92.100.

[5] Munchausen Syndrome by Proxy ("MSBP") is a disorder where an individual, usually a mother, inflicts physical harm upon a child (the proxy) to gain the sympathy and attention of medical personnel. *See generally Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1238 n. 2 (10th Cir. 2003); *see also Yuille v. State Dep't of Soc. & Health Servs.*, 111 Wn. App. 527, 530 n. 2 (2002) ("MSBP includes the deliberate production or feigning of physical symptoms in another person, usually a child, who is under the individual's care. The person suffering from MSBP then presents the child for treatment and disclaims any knowledge of the source of the child's symptoms."). In other instances, the disorder is known as Factitious Disorder by Proxy ("FDP") or Pediatric Condition Falsification ("PCF"). *See* Feldman Decl., ECF No. 42 at Ex. 3.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 4**

Based on the physicians' reports, Defendant Sam Cain, a social worker assigned to CPS, placed JG and RB into Temporary Protective Custody and initiated Shelter Care and Dependency proceedings.

On November 17, 2005, Defendant Cain filed a petition for dependency in Grant County Superior Court alleging that J.G. (then age eight) and R.B. (then age six) were being abused/neglected, due to the concerns reported by medical care team. However, after the expiration of the 72 hour administrative hold, the minors were returned to Ms. Bentley Miller's custody on November 17, 2005, after the Superior Court found insufficient reasonable cause to believe that shelter care was necessary.

Approximately two months after the CPS investigation, DSHS/DCFS social worker Kathy Balam asked Defendant Kenneth Feldman, a Seattle pediatrician who specializes in child abuse, to review R.B.'s medical records and evaluate the prior reports of FDP/MBP. Defendant Feldman then submitted a report to DCFS on January 17, 2006, in conjunction with the dependency proceedings, but after J.G. and R.B. were placed on administrative hold by Sacred Heart. Ultimately, Defendant Feldman opined that R.B. was a victim of Pediatric Condition Falsification ("PCF"), having reached that conclusion after a nine-hour review of medical records submitted by DCFS and Dr. Harper.

On February 10, 2006, Ms. Bentley Miller contacted CPS and requested that R.B. and J.G. be placed with their biological father Anthony Bentley, after a physical altercation with J.G. was reported.

On March 14, 2006, Ms. Bentley Miller relinquished custody of J.G. and R.B. in a stipulated order of dependency, and agreed to their placement with Mr. Bentley. Both parties were represented by counsel at all times throughout the proceedings. In addition, although visitation rights were accorded to Ms. Bentley Miller, they were limited to supervised visits after new findings of physical abuse

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 5**

involving J.G. surfaced. Eventually, Mr. Bentley disappeared and the girls were placed into foster care.

In the interim, Ms. Bentley Miller and Plaintiff Daniel Miller gave birth to a daughter, A.M., on June 6, 2007. On June 8, 2007, Defendant Angela Newport filed a petition for dependency as to A.M, based on concerns that Ms. Bentley Miller had already reported to family members that her baby would be unhealthy, prior to the birth. Defendant Newport alleged that A.M. would be at risk of imminent harm by her mother who created false medical conditions. On June 8, 2007, pursuant to an *ex parte* order of protection, A.M. who was taken into DSHS custody. On June 13, 2007, a Shelter Care hearing was held, wherein the court granted Mr. Miller custody of A.M. Ms. Bentley Miller, however, was ordered to not have any unauthorized contact with A.M.

On August 5, 2007, CPS received a report that Mr. Miller and Ms. Bentley Miller had fled to Canada with A.M. On August 15, 2007, CPS also received a report that Mr. Miller was incarcerated in Canada. Thereafter, Ms. Bentley Miller contacted CPS and local authorities in Stevens County, and subsequently turned herself in. DSHS/DCFS courtesy supervisor Bill Wilson then drove to the Canadian border and picked up A.M. Thereafter, A.M. was placed into Shelter Care.

Plaintiffs were then charged in Stevens County with Kidnapping in the First Degree. On September 25, 2007, Mr. Miller pled guilty to Attempted Custodial Interference in the First Degree and received 38 days custody. Likewise, Ms. Bentley Miller pled guilty to the latter charge on December 11, 2007, and received 32 days custody. Both Plaintiffs were represented by counsel.

On August 27, 2008, A.M. was returned to Plaintiffs' custody. On April 13, 2009, J.G. and R.B. were reunited with Ms. Bentley Miller. The dependency of

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 6

J.G. and R.B. was dismissed on October 12, 2009. Plaintiffs have since relocated and now reside in Indiana.

Plaintiffs filed the instant lawsuit on September 20, 2012, against the DSHS Defendants and physicians Deborah Harper and Kenneth Feldman. *See* Complaint, ECF No. 1.

Plaintiffs assert the following claims: [6]

(I)  § 1983 – Violation of Right to Privacy (Against all Defendants);

(II)  § 1983 – Violation of Right to Access to the Court and Effective Assistance of Counsel. (Against all Defendants);

(III)  § 1983 – Violation of Due Process Rights (Against all Defendants);

(IV)  § 1983 – Violation of Procedural Due Process Rights (Against all Defendants);

(V)  § 1983 – Violation of 4th Amendment Rights (Against all Defendants);

(VI)  § 1983 – Violation of 4th Amendment for Deliberate False Statements in Ex Parte Filing for Court Order (Against all Defendants);

(VII)  § 1983 – Conspiracy (Against all Defendants);

(VIII)  State Law Claim – Social Worker Negligence (Against all DSHS Defendants);

---

[6] Plaintiffs initially sued State Defendants Newport, Cain, Balam, Pratt, Prolo, and Wilson in their individual and official capacities. *See* Complaint at ¶¶ 12-17. However, Plaintiffs' have conceded that the State Defendants may not be sued in their official capacity and consented to "dismissing all claims in their complaint brought against all personally named defendants sued in their official capacity[.]" *See* Pls.' Resp. ECF No. 57 at 3. Thus, the Court need not address Defendants' contentions that Plaintiffs' claims are barred by the Eleventh Amendment. *See* ECF No. 44 at 6.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 7**

(IX) § 1983 – Supervisor Liability – Policy of Unconstitutional Action (Against all Defendant DSHS Supervisors);

(X) § 1983 – Supervisor Liability – Failure to Train (Against all Defendant DSHS Supervisors);

(XI) State Law Claim – Intentional/Negligent Infliction of Mental Distress (Against all DSHS Defendants);

(XII)  Request for Judicial Declaration – that any diagnosis of Munchausen's by Proxy by Dr. Feldman must be confirmed by a licensed psychiatrist prior to the removal of a child.

(XIII)  Request for Judicial Declaration – that Washington law requires an allegation of physical or mental injury for CPS to remove a child (where there is no injury the state can only proceed with a case for neglect);

(XIV)  Request for Judicial Declaration – that a diagnosis of Munchausen's by proxy may only be pursued in a child protection case when child has no underlying organic health issue that "explain the symptoms which the child presents with."

## LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 8**

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). The non-moving party must present more than a scintilla of evidence in their favor to survive summary judgment. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009).

Moreover, to avoid summary judgment, a plaintiff must present "significant probative evidence tending to support" his or her allegations. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citations omitted). "A district court does not have a duty to search for evidence that would create a factual dispute." *Id.*

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

*Pro se* pleadings should be construed liberally. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations and quotations omitted); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). This is particularly important in civil rights cases. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1263 (9th Cir. 1992). However, "conclusory allegations

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 9

of official participation in civil rights violations are not sufficient to withstand [summary judgment]." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Id*.

## DISCUSSION

### I.    State Defendants' Motion for Summary Judgment

#### A.    Social Worker Immunity

"[S]ocial workers have absolute immunity when they make 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'" *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008) (en banc) (per curiam) (quoting *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc))

"To the extent, however, that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial functions, only qualified, not absolute immunity, is available." *Miller*, 335 F.3d at 898; *Beltran*, 514 F.3d at 908-09 (concluding that social workers are not entitled to absolute immunity for their investigatory conduct).

#### 1.    Absolute Immunity

The State Defendants argue they are protected by absolute immunity for court-related functions performed during child abuse proceedings. ECF No. 44 at 11-13. Defendants assert that where a removal is based on a physician's report, DSHS is required to take the child into custody pursuant to RCW 26.44.056, and that under state law they are immune based on instituting such proceedings. [7]

---

[7] RCW 26.44.056 provides, in relevant part:

> (2) Whenever an administrator or physician has reasonable cause to believe that a child would be in imminent danger if released to a parent, guardian, custodian . . . the administrator or physician may notify a law enforcement agency [who] shall take the child into

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 10**

Thus, State Defendants argue that social workers are entitled to absolute immunity for "functions that were critical to the judicial process" which include: (1) initiating and pursuing child-dependency proceedings. *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157-58 (9th Cir. 1987); (2) presenting *ex parte* orders that authorize removal of a child and placement with a third-party foster parent. *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762-65 (9th Cir. 1987); (3) advocacy-related functions that fall within the parameters of the duties under which the social workers are "immune at common law;" *Miller*, 335 F.3d at 896-97, *citing Imber v. Pachtman*, 424 U.S. 409, 430 (1988); and (4) providing testimony in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 330-36 (1983); *Meyers*, 812 F.2d at 1156.

Plaintiffs respond that Defendants' immunity analysis "ignores the Defendants' role in procuring *ex parte* removal orders of a child from it's [sic] parents through distortion, misrepresentation and omission [and] by submitting a fraudulent petition as detailed at length in the complaint." ECF No. 57 at 6.

Here, the Court agrees that social worker Defendants' participation in obtaining temporary orders of protection and initiating the dependency and shelter care proceedings involving R.B., J.G., and A.M. were based on numerous

---

custody or cause the child to be taken into custody. The law enforcement agency shall release the child to the custody of child protective services. Child protective services shall detain the child until the court assumes custody or upon a documented and substantiated record that in the professional judgment of the child protective services the child's safety will not be endangered if the child is returned.

(3) A child protective services employee, an administrator, doctor, or law enforcement officer shall not be held liable in any civil action for the decision for taking the child into custody, if done in good faith under this section.

Wash. Rev. Code Ann. § 26.44.056(2)-(3).

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 11**

physicians' opinions that the minors in question were in imminent risk of harm if left in their parents' care. The State Defendants relied not only on the opinions of the reporting physicians at Sacred Heart, Cain Decl., ECF No. 46, Ex. 2 at 24-25, but also upon the following: (1) a psychological evaluation dated December 19, 2005, by Thomas McKnight, Ph.D., Newport Decl., ECF No. 48 at Ex. 8; (2) a medical review and report dated January 17, 2006 by pediatrician and child abuse expert Defendant Kenneth Feldman, M.D., Feldman Decl., ECF No. 42, Ex. Q at 110-112; (3) a psychological evaluation dated April 11, 2008, by Mark Mays Ph.D., J.D., Clemmons Decl., ECF No. 52 at Ex. 26; (4) a report by guardian ad litem for R.B. and J.G. dated April 11, 2008, Clemmons Decl. at Ex. 25; (5) Ms. Bentley Miller's therapist's notes, Clemmons Decl., at Ex. 27; and (5) a neurological evaluation of R.B. conducted on January 13, 2009, Clemmons Decl. at 30.

Most importantly, Plaintiffs have submitted no evidence to support their conclusory allegations that State Defendants "procur[ed] *ex parte* removal orders of a child from it's [sic] parents through distortion, misrepresentation and omission, by submitting a fraudulent petition as detailed at length in the complaint." ECF No. 57 at 6. *See Tovar v. U.S. Postal Serv.,* 3 F.3d 1271, 1279 (9th Cir.1993) ("[B]are assertions or unsupported conclusions are not facts sufficient to support either a summary or post-trial judgment.").

Accordingly, the Court grants State Defendants' Motion for Summary Judgment and dismisses Defendants Newport, Cain, Balam, Pratt, Prolo, and Wilson, in their individual capacities, as they are absolutely immune from suit.

### 2. Qualified Immunity

State Defendants also argue that to the extent that any of their actions were discretionary, and not critical to the judicial process, they are entitled to qualified immunity. ECF No. 44 at 14-17. If the challenged conduct "does not violate clearly

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 12**

1  established statutory or constitutional rights of which a reasonable person would

2  have known," the social workers are entitled to the shield of qualified immunity.

3  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

4      Plaintiffs argue that Defendants are not entitled to qualified immunity

5  because Plaintiffs newly "verified complaint" clearly alleges the deprivation of

6  actual constitutional rights which were clearly established at the time of the alleged

7  violation[.]" ECF No. 57 at 6-7.

8      In the instant case, Plaintiffs have submitted no evidence they were deprived

9  of notice, a full hearing, legal counsel, or access to the courts as alleged in the

10  Complaint at ¶¶ 139-140, 141-142, and 164-195. In fact, by agreement or contested

11  hearing, the Superior Court found that Plaintiffs' abused their children or were

12  unfit to provide care. Furthermore, at all times during the dependency and removal

13  proceedings related to minor children J.G., R.B., and A.M., Plaintiffs were

14  represented by counsel, and their children by representative guardians.

15      Notably, Plaintiffs submit only two pieces of evidence in support of their

16  claims: (1) a May 2009 report by the Office of the Family & Children's

17  Ombudsman detailing an investigation into the Child Welfare System in Colville,

18  Washington. *See* ECF No. 57-1 at 1-107; and (2) a declaration submitted by Ms.

19  Bentley Miller in which she declares that all allegations in her complaint, whether

20  based on personal knowledge or not, are true. *See* Bentley Miller Decl., ECF No.

21  57-2. Thus, Plaintiffs claim the allegations set forth in their "verified complaint"

22  are sufficient to survive summary judgment, pursuant to Fed. R. Civ. P. 11.

23  However, the Court disagrees, as "[a] conclusory, self-serving affidavit, lacking

24  detailed facts and any supporting evidence, is insufficient to create a genuine issue

25  of material fact." *F.T.C. v. Publishing Clearing House,* Inc., 104 F.3d 1168, 1171

26  (9th Cir.1997).

27

28

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND TO DISMISS** * 13

1       Here, after a thorough review of the record, the Court finds there is no

2  evidence to support a constitutional violation by the individual State Defendants.

3  *See* Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (noting that "[s]weeping

4  conclusory allegations will not suffice to prevent summary judgment.")

5       Therefore, with respect to all State Defendants involved in the dependency

6  proceedings not covered by absolute immunity, the Court finds any remaining

7  claims are shielded by qualified immunity and arising from the dependency and

8  removal proceedings of J.G., R.B., and A.M.

9      **B.**    **Statute of Limitations**

10      The State Defendants next argue that conduct occurring outside of the

11 applicable statute of limitations must be dismissed. ECF No. 18.

12      "Because § 1983 does not contain a statute of limitations, federal courts

13 apply the forum state's statute of limitations for personal injury claims." *Johnson*

14 *v. California*, 207 F.3d 650, 653 (9th Cir. 2000). In Washington, "the appropriate

15 statute of limitations in a § 1983 action is the three-year limitation of RCW

16 4.16.080(2)." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir.1991).

17 However, to determine when a statute of limitations period begins to run, this

18 Court must look to federal law to see "when a claim accrues." *Johnson*, 207 F.3d at

19 653. Under federal law, a claim accrues when the plaintiff knows or should have

20 known of the injury. *See, e.g.*, *Knox v. Davis*, 260 F.3d1009, 1013 (9th Cir. 2001);

21 *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002).

22 Accordingly, claims against the State Defendants and Defendant Feldman began to

23 accrue when Plaintiffs knew or should have known of the alleged injury.

24      In the case *sub judice*, Plaintiffs' Complaint challenges petitions filed by

25 DSHS relating to dependency proceedings in November 2005 (as to minors R.B.

26 and J.G.) and June 2007 (as to minor A.M.). The Court agrees with Defendants that

27 Plaintiffs have failed to identify any wrongful conduct after June of 2007. Thus,

28

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT AND TO DISMISS * 14**

the Court finds the cause of action accrued, at the latest, by June of 2007. However, this date is well outside of the applicable three-year limitation period, as Plaintiffs filed their Complaint on September 20, 2012. *See* Complaint, ECF No. 1 at 1.

This does not end the Court's analysis, as Plaintiffs argue the "discovery rule" and equitable tolling are appropriate in the instant case. ECF No. 57 at 11. Additionally, Plaintiffs contend, without factual support, that Defendants "have continuously prevented Plaintiffs from pursuing this litigation." *Id.*

The Court finds these arguments to be without merit. First, Plaintiffs have submitted no evidence specific to the State Defendants or Defendant Feldman showing their actions constituted a "continuing violation." In this case, the conduct of Defendants (including Defendant Feldman in his consulting capacity with DSHS), involved decisions to take action and protect the minor children and were based on "discrete acts" and not a continuing violation theory as posited by Plaintiffs. *See Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara*, 344 F.3d 822, 828-29 (9th Cir. 2003) (discussing, in a § 1983 action, "discrete acts" versus the continuing violation theory as set forth in *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Also, "in determining when an act occurs for statute of limitations purposes, [this Court] look[s] at when the 'operative decision' occurred [] and separate from the operative decisions those inevitable consequences that are not separately actionable." *See RK Ventures,* 307 F.3d at 1058 (finding that a final decision to institute abatement hearings was the operative action in a § 1983 case, while the actual beginning of the hearing was simply an effect of that decision).

Thus, the acts that followed State Defendants initiation of removal and dependency proceedings, including the review conducted by Defendant Feldman

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 15

as a DSHS consultant, were merely consequences of those decisions and of the acts that occurred in making the underlying dependency and removal decisions.

Finally, the Court can see no reasonable basis to apply equitable tolling in the instant case. Plaintiffs' recitation to the May 2009 Ombudsman Report does not reference any of the State Defendants in this case, nor does it relate specifically to the facts of the instant case. Furthermore, Plaintiffs' allegations that Defendants' actions constitute a "continuous chain of tortious activity" and amount to interference with the instant litigation are conclusory and vague.

Consequently, Plaintiffs' § 1983 Claims against State Defendants and Defendant Feldman with respect to Claims 1-7, and 9-10, on an alternative basis, are barred by the statute of limitations.

### C.    State Law Negligence/Tort Claims

Defendants next contend that Plaintiffs have failed to comply with the procedural requirements of RCW 4.92.100. As a result, they argue summary dismissal of Plaintiffs' state law intentional or negligent infliction of emotional distress claim (Count 11) and social worker negligence claim (Count 8) is warranted. ECF Nos. 38 at 7-8, 44 at 18.

Remarkably, Plaintiffs respond that Washington's Tort Claims Act is limited to tortious conduct, which they assert does not apply to negligence actions. *See* ECF No. 57 at 18-19.

 Again, Plaintiffs' are incorrect. Washington's Tort Claims Act, RCW 4.92.100, requires that claims for damages arising from the tortious conduct of state employees be submitted to Washington State's Risk Management Division. Wash. Rev. Code 4.92.110. A plaintiff must then wait 60 days before filing a complaint. *Id.* The failure to file a claim with the Risk Management Division results in dismissal. *Kleyer v. Harborview Med. Ctr.,* 76 Wash. App. 542, 545, 887 P.2d 468 (1995). Compliance with the statutory notice procedures is jurisdictional.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 16

*Levy v. State,* 91 Wash. App. 934, 957 P.2d 1272 (1998) (failure of claimant to verify claim form as required by RCW 4.92.100 deprived court of jurisdiction); s*ee also Hust v. Wyoming*, 372 F. App'x 708, 710 (9th Cir. 2010) (district court properly dismissed plaintiff's Washington state tort claims in § 1983 action for failure to comply with RCW 4.92.110).

Here, Plaintiffs have not complied with the pre-suit tort claim notice procedure, as mandated by RCW 4.92.110. As such, the Court would have no jurisdiction to hear these claims. Consequently, Plaintiffs' Claims 8 and 11 are dismissed with prejudice.

### D.    Judicial and Collateral Estoppel

Lastly, Defendants argue that the doctrines of judicial and collateral estoppel prevent Plaintiffs from re-litigating the prior Superior Court findings that J.G., R.B., and A.M. were abused. ECF No. 44.

Plaintiffs respond that Defendants have not adequately briefed this issue. ECF No. 57 at 14-17. They argue the agreed upon order of dependency is not a final judgment on the merits, nor did they agree the children were abused by Ms. Bentley Miller. *Id.* at 15.

Here, the Court resolves this issue in favor of Plaintiffs, as Defendants have failed to set forth the necessary requisites to support a finding of judicial or collateral estoppel.

## II.    Defendant Feldman's Motions to Dismiss and for Summary Judgment

### A.    Motion to Dismiss

Defendant Feldman argues that Plaintiffs have failed to satisfy the pleading standards and seeks judgment on the pleadings, or alternatively, summary judgment on the remaining fraud and conspiracy claims alleged by Plaintiffs.

Plaintiffs did not respond to the Defendant Feldman's motion.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 17

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed. A court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard,* 581 F.3d 922, 925 (9th Cir.2009) (citation omitted); *see Yakima Valley Mem'l Hosp. v. Wash. State Dept. of Health,* 654 F.3d 919, 925 (9th Cir.2011) (court "assume[s] the facts alleged in the complaint are true"). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.; see Lyon v. Chase Bank USA, N.A.,* 656 F.3d 877, 883 (9th Cir.2011).

However, "[i]f, on a motion under Rule ... 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Whether to convert a [12(c)] motion to one for summary judgment is within the discretion of the district court." *Young v. City of Visalia,* 687 F.Supp.2d 1141, 1150 (E.D. Cal. 2009). If the district court chooses not to rely on the extraneous matter no conversion occurs. *See Jackson v. S. California Gas Co.,* 881 F.2d 638, 642 n. 4 (9th Cir.1989) (recognizing that when determining whether a motion to dismiss was converted into a motion for summary judgment the "proper inquiry is whether the court relied on the extraneous matter").

As a preliminary matter, the Court grants Defendant Feldman's request and utilizes, for the purpose of this motion, the standard set forth by Rule 56. *See* Fed. R. Civ. P. 56. In fact, Defendant Feldman explicitly noted the Court may decline to rule on the Rule 12(c) motion under the *Twombly* standard, and instead address the dismissal of Plaintiffs' fraud and conspiracy claims under Rule 56. *See* Fed. R. Civ. P. 12(d).

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 18

Defendant Feldman first argues that Plaintiffs have failed to state a fraud claim. ECF No. 38 at 11-13. Here, the Court agrees that Plaintiffs' allegations regarding a fraudulent report or false diagnosis is not sufficient to meet the heightened pleading standard of Fed. R. Civ. P. 9(b). *See* Complaint at ¶¶ 100, 161. More importantly, Plaintiffs have not submitted any evidence that Defendant Feldman issued a fraudulent diagnosis. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In contrast, Defendant Feldman has submitted a declaration detailing his report and the records relied upon in support of his conclusion that R.B. was likely a victim of Pediatric Condition Falsification. *See* Feldman Decl., ECF No. 42 at ¶¶ 9-18.

Next, Defendant Feldman argues that Plaintiffs' Complaint lacks any facts to establish a conspiracy allegation under 42 U.S.C. § 1983. To state a conspiracy claim under § 1983 a Defendant must show: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir.1991). Again, at this stage of the proceedings, Plaintiffs have failed to present any evidence to support either element of their conspiracy claim regarding an agreement or meeting of the minds among defendants, or proof that a deprivation of Plaintiffs' constitutional rights was attributable to such agreement. In regard to this issue, "[s]weeping conclusory allegations will not suffice to prevent summary judgment. The [plaintiff] must set forth specific facts as to each individual defendant's" causal role in the alleged constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (citation omitted).

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 19

Based on the foregoing, Defendant Feldman is granted summary judgment on any of Plaintiffs remaining claims alleging fraud or conspiracy.

### B.    Defendant Feldman's Motion for Summary Judgment

Defendant Feldman first argues that Plaintiffs' claims under § 1983 must be dismissed where Plaintiffs cannot establish showing a violation of their constitutional rights. ECF No. 39 3-6. Defendant Feldman asserts that his review of R.B.'s medical records during an ongoing CPS child abuse investigation occurred after J.G. and R.B. were already removed from the home. Defendant Feldman also argues that Plaintiffs have failed to submit any evidence which demonstrates that Dr. Feldman's report violated Plaintiffs' Constitutional: (1) right to privacy, right to access the courts and effective assistance of counsel; (3) due process (substantive and procedural); (4) 4th Amendment Rights; and (5) Conspiracy.

Here, the Court need not reach these issues, as it has already determined *supra* that Plaintiffs' federal claims are barred by the statute of limitations.

## III.    Plaintiffs' Claims for Declaratory and Injunctive Relief

Plaintiffs' remaining claims for declaratory relief (Claims 12-14) and injunctive relief (not a specific claim, but fleetingly referenced in the Complaint at ¶2) are derivative of the underlying federal and state claims already granted summary judgment or dismissed by the Court. Here, Plaintiffs' claims for declaratory and injunctive relief are not viable claims, and because all of Plaintiffs' other claims fail as a matter of law -- Plaintiffs are not entitled to pursue declaratory or injunctive relief.

Moreover, the Court concludes that Plaintiffs have failed to take advantage of multiple opportunities to present additional facts to support their claims, [8] and it

---

[8] For example, on October 4, 2013, the Court granted Plaintiffs' Motion for Extension of Time to File a Response and allowed additional time to submit further evidence related to their claims. *See* ECF No. 56.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS** * 20

appears that Plaintiffs cannot substantiate their claims in such a way as to show that they are entitled the relief sought. Accordingly, the dismissal of plaintiffs' declaratory and injunctive relief shall be with prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant Feldman's Partial Motion to Dismiss and Motion for Summary Judgment, ECF Nos. 38 and 39 are **GRANTED** in part**.**

2. State Defendants' Motion for Summary Judgment, ECF No. 44, is **GRANTED**.

3. Defendants Harper and John and Jane Doe 1-10 are **DISMISSED**.

4. All pending deadlines and hearings are **STRICKEN**.

5. The District Court Executive is **DIRECTED** to enter judgment in favor of State Defendants and Defendant Feldman and against Plaintiffs.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and Plaintiffs and **CLOSE** the file.

**DATED** this 17th day of December, 2013.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS * 21**